UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CARL HIGBIE, JOSEPH HARRIS, and
MICHAEL VORTUBA,

                                     *Plaintiffs*,

            -against-

STEVEN G. JAMES, in his official capacity as
Superintendent of the New York State Police, KYLE
BOURGAULT, in his official capacity as Sheriff of
Rensselaer County, New York, DONALD J. KRAPF,
in his official capacity as Sheriff of Columbia County,
New York, and JOHN DOES 1-10,

                                     *Defendants*.

24-CV-0174

MAD/TWD

---

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF SUPERINTENDENT JAMES' CROSS-MOTION FOR SUMMARY JUDGMENT

                                                LETITIA JAMES
                                               New York State Attorney General
                                               *Attorney for Superintendent James*
                                               The Capitol
                                               Albany, New York 12224

Matthew J. Gallagher, Bar Roll No. 701111
James M. Thompson, Bar Roll No. 703513

Date: February 28, 2025

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 1

    POINT I    THE SUPERINTENDENT IS NOT A PROPER DEFENDANT AND HE IS IMMUNE TO SUIT UNDER THE ELEVENTH AMENDMENT .................................................................................................. 1

    POINT II    ANY CLAIM BASED ON THE PPB-3 APPLICATION FORM IS MOOT .................................................................................................................... 4

    POINT III    PLAINTIFFS CANNOT MANUFACTURE A RESIDENCY OR EMPLOYMENT REQUIREMENT ............................................................... 4

    POINT IV    ALTHOUGH THE COURT SHOULD NOT REACH THE ISSUE, AN IN-STATE RESIDENCY OR EMPLOYMENT REQUIREMENT WOULD BE CONSTITUTIONAL .............................. 7

    POINT V    PLAINTIFFS' FULL FAITH AND CREDIT AND PRIVILEGES AND IMMUNITIES ARGUMENTS ARE WITHOUT MERIT ............... 8

        A.    The Full Faith and Credit Clause Does Not Require New York to Accept Plaintiffs' Out-of-State Firearm Licenses ............. 8

        B.    Penal Law § 400.00 Does not Violate the Privileges and Immunities Clause ........................................................................ 10

CONCLUSION ............................................................................................................................. 10

## Table of Authorities

**Cases**                                                                                             **Page(s)**

*Antonyuk v. James*,
    120 F.4th 941 (2d Cir. 2024) ...................................................................................................9

*Baker by Thomas v. General Motors Corp.*,
    522 U.S. 2222 (1998) ...............................................................................................................9

*Bazinett v. Pregis LLC*,
    720 F. Supp. 3d 154 (N.D.N.Y. 2024) .....................................................................................6

*Deide v. Day*,
    No. 23 Civ. 3954, 2024 WL 3471294 (S.D.N.Y. July 19, 2024) .............................................4

*Franchise Tax Bd. of Cal. v. Hyatt*,
    538 U.S. 488 (2003) .............................................................................................................8-9

*Global Reins. Corp. of Am. v. Century Indemnity Co.*,
    22 F.4th 83 (2d Cir. 2021) .......................................................................................................6

*Libertarian Party of Erie Co. v. Cuomo*,
    970 F.3d 106 (2d Cir. 2020), ...................................................................................................1

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................................................3

*New York State Rifle & Pistol Assoc., Inc. v. James*,
    No. 22 Civ. 907, 2025 WL 553423 (N.D.N.Y. Feb. 18, 2025) ........................................ 1, 3-4

*Osterweil v. Bartlett*,
    21 N.Y.3d 580 (2013) ...................................................................................................... 1, 5-7

*Osterweil v. Bartlett*,
    706 F.3d 139 (2d Cir. 2013) .....................................................................................................5

*Schoenefeld v. Schneiderman*,
    821 F.3d 273 (2d Cir. 2016) ...................................................................................................10

*Shaibi v. Cissna*,
    No. 18 Civ. 102, 2019 WL 3945991 (W.D.N.Y. Aug. 20, 2019) .............................................4

*United States v. Rahimi*,
    602 U.S. 680 (2024) .............................................................................................................7-8

## Constitutions

U.S. Constitution, Art. IV, § 1 ................................................................................................8

## State Statutes

N.Y. Penal Law
    § 265.00(10)........................................................................................................................2, 6
    § 400.00..............................................................................................................................4, 10
    § 400.00(1)..........................................................................................................................1, 6
    § 400.00(3)(a) ..................................................................................................................1-2, 5-6

Defendant Steven G. James, sued in his official capacity as Superintendent of the New York State Police (Superintendent), by his attorney Letitia James, New York State Attorney General, respectfully submits this Reply Memorandum of Law in further support of his Cross-Motion for Summary Judgment.[1]

## PRELIMINARY STATEMENT

The in-state residency or employment requirement that Plaintiffs challenge in this action is nowhere in the statute they are challenging. The eligibility criteria in Penal Law § 400.00(1) do not include either requirement, and other subsections of that statute foreclose the existence of any such requirement. For Plaintiffs to prevail, they must convince the Court that Penal Law § 400.00(3)(a) contains an in-state residency and employment requirement, notwithstanding the Court of Appeals having already interpreted this specific subsection in *Osterweil v. Bartlett*, 21 N.Y.3d 580 (2013), and concluding that it simply does not exclude anybody. There are a host of additional problems with Plaintiffs' claims, and they are discussed in seriatim herein.

## ARGUMENT

### POINT I
### THE SUPERINTENDENT IS NOT A PROPER DEFENDANT AND HE IS IMMUNE TO SUIT UNDER THE ELEVENTH AMENDMENT

The Superintendent simply is not a proper defendant, as both principles of standing and the Eleventh Amendment bar suit. Under binding precedent, a claim against New York's licensing laws can only be brought against a licensing officer. *See Libertarian Party of Erie Co. v. Cuomo*, 970 F.3d 106, 122 (2d Cir. 2020) (affirming dismissal of Superintendent), *abrogated in part on other grounds by New York State Rifle & Pistol Assoc., Inc. v. Bruen*, 597 U.S. 1 (2022) (*Bruen*); *see also New York State Rifle & Pistol Assoc., Inc. v. James*, No. 22 Civ. 907, 2025 WL 553423,

---

[1] The Superintendent joins in Plaintiffs' request for oral argument on the parties' summary judgment motions.

at *3 (N.D.N.Y. Feb. 18, 2025) (D'Agostino, J.) (*NYSRPA v. James*). The Superintendent is not and never would be the licensing officer determining Plaintiffs' applications, since his licensing authority is limited to retired members of the Division of State Police. *See* N.Y. Penal Law §§ 265.00(10); 400.01. Perhaps recognizing the traceability problem in suing someone who has no role in deciding their applications, Plaintiffs claim that their purported inability to apply for a firearms license in New York is "directly traceable to [the Superintendent] and his office" because he promulgates the PPB-3 form and someone within the New York State Police (NYSP) purportedly told Plaintiff Harris (but not Plaintiffs Votruba or Higbie) that he "could not" apply for a license. Plaintiffs' Memorandum of Law in Opposition and in Reply, ECF No. 44-5 (Plf. Reply Memo), at 1-2. Plaintiffs' attribution of wrongdoing to the Superintendent for these reasons is insufficient to establish the Superintendent as a proper defendant.

Plaintiffs assert that the PPB-3 form's prior requirement to provide a New York State driver's license number was a barrier to anyone not a resident to be able to apply for a firearm license because of the direction, "Complete the form in its entirety." Plf. Reply Memo 1 n.2. However, applying this logic would mean that applying for a license would be foreclosed to anyone who could not complete every optional or additional field of the form.[2] This would apply to anyone who, for example, lived in a house and could not provide an apartment number, was unemployed, did not have a business address, or was not in a relationship. To that end, Plaintiffs' claim that prior PPB-3 forms precluded non-New York residents from applying for a license based upon a statement about the current PPB-3 form is meritless. Despite the fervor raised regarding the PPB-3 form, there is no evidence that Plaintiffs not completing the New York driver's license field on

---

[2] A driver's license number (let alone a New York driver's license number) is not part of the required data that must be included in applications under Penal Law § 400.00(3)(a).

the form was a reason the Defendant Sheriffs would not have accepted applications from Plaintiffs. Plaintiffs' inability to apply for a license in this instance had nothing to do with the Superintendent, and, as such, subject-matter jurisdiction is lacking over their claims against him.

Even assuming that someone within NYSP informed Plaintiff Harris that he could not apply for a firearms license in New York, that phone conversation has no legal effect, and it is undisputed that the Superintendent does not control whether the Counties accept or grant licensing applications. Plaintiffs' 56.1 Response, ECF No. 44-6, ¶ 2. Meanwhile, Plaintiff Harris was informed by the respective Sheriffs' offices that neither Rensselaer nor Columbia Counties issue licenses to nonresidents, and Plaintiff's Votruba and Higbie were turned away from applying in Rensselaer County. Thus, Plaintiffs lack standing to sue the Superintendent because their purported inability to apply for a New York firearms license is due to the counties not accepting their applications, not any actions of the Superintendent. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Furthermore, the Superintendent is entitled to Eleventh Amendment immunity in this action on Plaintiffs' claims for injunctive relief. Earlier this month, this Court held that the Superintendent was entitled to immunity under the Eleventh Amendment where the plaintiff's licensing claims related to a challenge to New York's Concealed Carry Improvement Act's (CCIA) firearms safety course and training requirements. *NYSRPA v. James*, 2025 WL 553423, at *3. Since the Superintendent was "not involved in the licensing of civilian applicants like the Individual Plaintiffs since, under New York Law, he is only responsible for the licensing of retired members of the Division of State Police," and plaintiffs were not retired members of the Division of State Police, the *Ex parte Young* exception, which evades Eleventh Amendment immunity when a plaintiff seeks injunctive relief against a state official for an ongoing constitutional violation, did not apply because the Superintendent lacked the "special relation" required for the exception. *Id.*

3

The same applies here, as Plaintiffs are not former members of the Division of State Police and the Superintendent has no involvement in their licensing. *See id.*

## POINT II
## ANY CLAIM BASED ON THE PPB-3 APPLICATION FORM IS MOOT

Plaintiffs acknowledge that the only part of the PPB-3 application form that they object to has been removed. *See* Plaintiffs' Memorandum of Law, ECF No. 39-12 (Plf. Memo), at 12 n.10. Accordingly, any controversy based on the content of the form would be moot. Plaintiffs attempt to get around this straightforward conclusion by suggesting that the Superintendent intends to re-amend the form to add "New York" back to the driver's license number field, but that contention is unsupported, and where "Plaintiffs offer little more than speculative concerns about recurrence," the argument is "plainly insufficient to show that their claims against Defendants are not moot." *See Deide v. Day*, No. 23 Civ. 3954, 2024 WL 3471294, at *3 (S.D.N.Y. July 19, 2024); s*ee also NYSRPA v. James*, 2025 WL 553423, at *8 (holding Second Amendment claim was moot against the Superintendent after field removed from PPB-3 form). Moreover, "government actors enjoy a rebuttable presumption that the objectionable behavior will not recur," *Shaibi v. Cissna*, No. 18 Civ. 102, 2019 WL 3945991, at *3 (W.D.N.Y. Aug. 20, 2019), and the presumption is even stronger in cases like this one where the government has put representations on the record. *Deide*, 2024 WL 3471294 at *3 (representation "is entitled to some deference, especially considering Plaintiffs have put forth no evidence suggesting that the Defendants intend to reinstate the challenged [policy]"); *see* Declaration of Michael Deyo, ECF No. 42-1 (Deyo Dec.), ¶¶ 11-12.

## POINT III
## PLAINTIFFS CANNOT MANUFACTURE A
## RESIDENCY OR EMPLOYMENT REQUIREMENT

There is no potential Second Amendment violation here because Plaintiffs' case is dependent on misinterpreting a state statute. Penal Law § 400.00 simply does not contain the in-

4

state residency or employment requirement that they allege: it is not anywhere in the eligibility criteria listed in Subsection (1); Subsection (7) specifically states that a license may be "issued to a noncitizen, or to a person not a citizen of and usually a resident in the state;" and Subsection (2)(f) states that a permit may be issued to "any person" and is "without regard to employment or place of possession." Their argument to the contrary is based only on misreading Subsection (3)(a) of the statute as an eligibility restriction; but that reading makes no sense when eligibility restrictions are gathered together elsewhere in the statute, and the New York Court of Appeals held that this specific provision does not "exclude certain applicants from qualifying." *See Osterweil*, 21 N.Y.3d at 586; *see also Osterweil v. Bartlett*, 706 F.3d 139, 142 (2d Cir. 2013) ("As the State noted at oral argument, § 400.00(3)(a) is phrased in the form of a procedural rule about *where to file* to get a license, not a limitation on *who may get* one." (emphasis in the original)).[3] Plaintiffs first argue that Subsection (7)'s language about licenses for noncitizens of New York must somehow apply only to noncitizens with in-state employment, but they offer no citation to any legal authority for the proposition, which has no basis in either the statute's text or the governing case law. *Cf. Osterweil*, 21 N.Y.3d at 587 (emphasizing that "a handgun license may be issued, under the statute, to a person who is 'not . . . usually a resident' in New York State" (ellipsis in the original)).

Plaintiffs' second argument is simply wrong. Plaintiffs contend that "licensing officer" is "a term undefined in the Penal Law," and therefore the Court should take the residency or employment language from Penal Law § 400.00(3)(a) and impute it to the term "licensing officer"

---

[3] Justice O'Connor's reference to oral argument was not simply "recounting New York's litigation position," as Plaintiffs would have it, instead, she was *agreeing* with it. *See Osterweil*, 706 F.3d at 142 (noting in the previous sentence that the Court of Appeals "has never held that this statute imposes even a residence requirement."). Indeed, the proposition is uncontroversial and apparent on the face of the law: Subsection (3)(a) by its own terms concerns the locations where "Applications shall be made and renewed," while "Eligibility" is governed by Subsection (1).

where it appears elsewhere. Plf. Reply Memo 7-8. This is circular logic, but the argument fails most grievously because the term "licensing officer" *is* defined by statute, in Penal Law § 265.00(10), and it simply designates the person who issues firearm licenses in any given part of New York State. There is nothing in that statutory definition that supports Plaintiffs' claims.

Likewise, Plaintiffs' third argument looks to Subsection (2)(f)'s language that a concealed carry permit may be granted to "any person" and suggests that it cannot "cover[] literally 'any person' (indeed including felons, as [the Superintendent's] logic would permit)." Plf. Reply Memo 8. That contention makes little sense. "Any person" does not mean literally anyone, but instead "any person" who meets the eligibility criteria in N.Y. Penal Law § 400.00(1), which does prohibit the issuance of licenses to felons (*see* subsections (1)(b) and (1)(c)) but contains no language whatsoever requiring in-state residency or employment.

Ultimately, the only potential statutory avenue that could exclude Plaintiffs from eligibility is Penal Law § 400.00(3)(a), but the State's highest court already ruled that this provision simply does not "exclude certain applicants from qualifying at all." *Osterweil*, 21 N.Y.3d at 586.[4] That decision on the meaning of a New York State statute is controlling. *See Bazinett v. Pregis LLC*, 720 F. Supp. 3d 154, 161 (N.D.N.Y. 2024) (D'Agostino, J.). Neither pre-*Osterweil* case law, pre-*Osterweil* litigation positions, nor subsequent decisions from lower courts can undermine (let alone overturn) the binding effect of the Court of Appeals' interpretation of a New York State statute. *See Global Reins. Corp. of Am. v. Century Indemnity Co.*, 22 F.4th 83, 100-01 (2d Cir. 2021).

Resolving the statutory issue resolves this litigation. If the Court finds the statute to be ambiguous, the canon of constitutional doubt and the doctrines of abstention discussed in the

---

[4] The *Osterweil* Court was considering the issue of domicile rather than residence, but its decision also forecloses any contention that residency is required, since any such requirement could only stem from Subsection (3)(a), and Judge Piggott's opinion for the unanimous court holds that this subsection does not limit eligibility. *See Osterweil*, 21 N.Y. 3d at 585.

Superintendent's moving brief are all available to resolve any potential issue. The Court should "decline to reach the constitutional question raised by [Plaintiffs], which is based on a flawed reading of the licensing statute." *Osterweil*, 738 F.3d at 521.

**POINT IV**
**ALTHOUGH THE COURT SHOULD NOT REACH THE ISSUE, AN IN-STATE RESIDENCY OR EMPLOYMENT REQUIREMENT WOULD BE CONSTITUTIONAL**

Plaintiffs' opposition to the historical showing made by the Superintendent is exactly the approach that the Supreme Court rejected by an 8-to-1 margin in *United States v. Rahimi*, 602 U.S. 680 (2024), cautioning that "some courts have misunderstood the methodology of our recent Second Amendment cases" which "were not meant to suggest a law trapped in amber." *Rahimi*, 602 U.S. at 691. The case law does not require a "'dead ringer' or a 'historical twin,'" as Plaintiffs would have it, nor does the Constitution permit only "those regulations identical to ones that could be found in 1791," as Plaintiffs demand. *See id.* at 692 (quoting *Bruen*, 597 U.S. at 30). Instead, as the Supreme Court repeatedly emphasized, a modern law need only be "consistent with the principles that underpin the Nation's regulatory tradition." *Id.* at 681, 692.

One of those principles, consistent through the centuries, is that jurisdictions regularly made distinctions between firearm use by persons who were part of the community and persons who were not. In fact, the record here does contain a number of "dead ringers" for the requirements Plaintiffs claim New York law contains—licensing laws with explicit residency or employment requirements.[5] *See, e.g.,* Declaration of James M. Thompson, ECF No. 42 (Thompson Dec.),

---

[5] While Plaintiffs try to brush off several licensing laws as somehow implicitly allowing for the open carry of firearms, this is inconsistent with the text of several of the laws cited. While that may be true of the Brooklyn and New York City regulations, other cited sources explicitly covered all carrying of arms. *See, e.g.,* Albany, Thompson Dec., Ex. 11; Troy, *id.* Ex. 12; Milwaukee, *id.* Ex. 13; Georgia, *id.* Ex. 15; West Virginia, *id.* Ex. 18. Nor is there any basis in the historical statutes for Plaintiffs' assertion that the carry prohibitions with limited travelers' exceptions somehow implicitly included broad exceptions for open carry. *See, e.g.,* New Mexico, *id.* Ex. 7; Los Angeles, *id.* Ex. 8; Texas, *id.* Ex. 6.

7

Exhibits (Ex.) 9, 13, 14. Nor is there any plausible basis for Plaintiffs' argument that these jurisdictions implicitly allowed nonresidents to carry (without saying so), or that these jurisdictions implicitly accepted other licenses issued elsewhere (again, without saying so). *See* Plf. Reply Memo 20. To the contrary, these laws by their explicit terms barred carriage by anyone without a license. *See, e.g.,* Thompson Dec. Ex. 11 § 2 (covering "Any person, . . who has occasion to carry a loaded revolver, pistol, or firearm for his protection"); *id.* Ex. 9 § 2(similar); *id.* Ex. 12 § 2 (similar); *id.* Ex. 13 ("unlawful for any person except policemen"); *id.* Ex. 15 § 348(a) ("unlawful for any person . . . in any county in the State of Georgia").

*Rahimi* instructs courts to ignore the noise, reject the attempt to write off this or that piece of history based on the slightest of distinctions, and instead focus on "the principles that underpin our regulatory tradition." 602 U.S. at 692. Consistent history throughout the centuries demonstrates that communities could, and did, limit the possession of deadly weapons to persons with ties to the community. Plaintiffs point to language in *Bruen* saying that later evidence can be disregarded "when it contradicts earlier evidence," Plf. Reply Memo 20 (quoting *Bruen*, 597 U.S. at 66 n.28), but they have not actually adduced any evidence showing that anyone in American history, ever, has viewed residency restrictions as unconstitutional. Where "we are [] aware of no disputes regarding the lawfulness of such prohibitions," courts can "assume it settled" that measures are "consistent with the Second Amendment." *Bruen*, 597 U.S. at 30.

### POINT V
### PLAINTIFFS' FULL FAITH AND CREDIT AND PRIVILEGES AND IMMUNITIES ARGUMENTS ARE WITHOUT MERIT

    **A.**    **The Full Faith and Credit Clause Does Not Require New York to Accept Plaintiffs' Out-of-State Firearm Licenses**

The United States Constitution provides that, "Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State." Art. IV, § 1. While

a statute is a "public act" within the meaning of the Full Faith and Credit Clause, it "does not compel a state to substitute statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate." *Franchise Tax Bd. of Cal. v. Hyatt*, 538 U.S. 488, 494 (2003). New York is competent and empowered to legislate its own procedures for firearm licensing. *See Baker by Thomas v. General Motors Corp.*, 522 U.S. 2222, 232 (1998). Plaintiffs acknowledge that the Full Faith and Credit Clause cannot support a cause of action, *see* Plf. Reply Memo 21, and instead make clear that this is a sub-argument under their Second Amendment claim. But they point to no historical tradition of one state being forced to accept the firearm decisions of another state, and the historical sources adduced by New York make clear that each individual jurisdiction was historically empowered to enact its own rules for firearms carriage within its borders. *See Antonyuk v. James*, 120 F.4th 941, 990 (2d Cir. 2024).

Plaintiffs are requesting this Court do the exact thing the Full Faith and Credit Clause does not require: substitute the firearm licensing laws of Connecticut and Massachusetts for New York's firearm licensing law, within New York's borders. *See Franchise Tax Bd. of Cal.*, 578 U.S. at 176. Plaintiffs speculate that they "are eligible to carry firearms within New York, and *would be issued* New York licenses were they permitted to apply," and "are eligible to carry firearms *under New York's own scheme*" because they have licenses issued by Massachusetts and Connecticut, *see* Plf. Reply Memo 22-23 (emphasis in original), but those states have different processes, different standards, and different decisionmakers than New York. The Full Faith and Credit Clause requires that "state-court judgments be accorded full effect in other States and preclude States from adopting any policy of hostility to the public Acts of other States." *Franchise Tax Bd.*, 587 U.S. at 245. But the grant of a Connecticut or Massachusetts firearm license is not a "judgment," and even if it were, those states are not empowered to determine who may carry deadly weapons within New York's borders any more than New York could grant or forbid the right to carry weapons there.

9

### B.      Penal Law § 400.00 Does not Violate the Privileges and Immunities Clause

Plaintiffs' Privileges and Immunities claim is similarly without merit. As a threshold matter, New York's licensing laws simply do not discriminate against non-New Yorkers, and it is undisputed that there are at least some jurisdictions within New York that accept such applications. *See* Plf. Reply Memo 8 (discussing how New York City "allow[s] out-of-state applications"). But even if this were not the case, Plaintiffs' claim fails under the binding precedent of *Schoenefeld v. Schneiderman*, 821 F.3d 273 (2d Cir. 2016), a case Plaintiffs fail to acknowledge in their reply brief. *Schoenefeld* emphasizes that "[t]he Privileges and Immunities Clause[] is 'not an absolute' that precludes states from ever distinguishing between citizens and noncitizens," *id.* at 279 (quoting *Supreme Ct. of Va. v. Friedman*, 787 U.S. 59, 67 (1988)), and that "a plaintiff challenging a law under the Privileges and Immunities Clause must allege or offer some proof of a protectionist purpose to maintain the claim." *Id.* at 280-81. Plaintiffs do not attempt to argue that they have shown any protectionist purpose, and instead argue that they do not have to,[6] a contention squarely foreclosed by *Schoenefeld*. *See id.* at 281 ("In the absence of such a showing, a Privileges and Immunities claim fails, obviating the need for a tailoring inquiry.").

### CONCLUSION

Based on the arguments above, the Superintendent's moving papers, and on all prior proceedings, the Superintendent respectfully requests that the Court grant his cross-motion for summary judgment, deny Plaintiffs' motion for summary judgment, dismiss the Complaint in its entirety and with prejudice, and grant such other and further relief as it deems just and proper.

---

[6] Plaintiffs' efforts to distinguish between the "purpose" and "effect" of Penal Law § 400.00 are equally unavailing. *See Schoenefeld*, 821 F.3d 273 at 280 ("it is [the] protectionist purpose, and not disparate effects alone, that identifies the sort of discrimination prohibited by the Privileges and Immunities Clause").

10

Dated: Albany, New York
      February 28, 2025

                                        LETITIA JAMES
                                        New York State Attorney General
                                        *Attorney for the Superintendent*

                          By: _____

                                        Matthew J. Gallagher
                                        Assistant Attorney General
                                        Bar Roll No. 701111
                                        The Capitol
                                        Albany, NY 12224
                                        Tel: (518) 776-2284
                                        Matthew.Gallagher@ag.ny.gov

                                        James M. Thompson
                                        Special Counsel
                                        Bar Roll No. 703513
                                        28 Liberty Street
                                        New York, NY 10005
                                        Tel.: (212) 416-6556
                                        James.Thompson@ag.ny.gov

CC:  All Counsel of Record
      (via ECF)